

# LAW OFFICES OF
# WILLIAM CAFARO

www.cafaroesq.com

*William Cafaro, Esq.*
ADMITTED IN NY, CA, MD & TX

108 West 39th Street, Suite 602
New York, New York 10018
Telephone: 212.583.7400
Facsimile: 212.583.7401
Email: bcafaro@cafaroesq.com

*Amit Kumar, Esq.*
*Associate*
ADMITTED IN NY & NJ
Email: akumar@cafaroesq.com

*Andrew S. Buzin, Esq.*
*Of Counsel*
ADMITTED IN NY, FL & DC

November 20, 2017

*__Via ECF__*
Honorable J. Paul Oetken
United States District Judge
United States District Court
Southern District of New York
40 Foley Square, Room 2101
New York, NY 10007-1312

Re:    **Rubio v. Flowerama, Inc., et al.**
       **Civil Action No. 17-cv-1248 (JPO)(KNF)**

Your Honor:

Plaintiff Luis Rubio ("Mr. Rubio") and Opt-In Plaintiffs Miguel Collado and Jose Luis Rodriguez (collectively "Plaintiffs") submit with Defendants' consent this request for approval[1], of the parties' settlement[2] in the above Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") action pursuant to Your Honor's Order dated August 4, 2017. (Docket Entry ("D.E.") 25.) *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) *cert. denied*, 136 S. Ct. 824 (U.S. 2016). The fully executed Settlement Agreement and General Release ("Agreement") appended as Exhibit "1".

---

[1] Defendants only join this settlement approval request with respect to sections I, II, and II of this request for approval and take no position on Part IV of this letter which deals directly with Plaintiffs' counsel's request for attorneys' fees, so long as such attorneys' fees application does not increase the total settlement obligation of Defendants or otherwise affect the consideration of the fairness, reasonableness, adequacy and good faith of the settlement, as stated in Section 4.B of the Agreement.
[2] This letter and the parties' Agreement filed herewith are tendered pursuant to Rule 408 of the Federal Rules of Evidence and § 4547 of the N.Y. C.P.L.R., with the express understanding that no part hereof or any document submitted herewith, or the fact that settlement was reached, may be utilized for any purpose if the Agreement is not approved by the Court and litigation must go forward, nor may any of the content or any related documents be used for any purpose except to enforce the Agreement.

**2** | P a g e

Rubio v. Flowerama, Inc., et al.
Civil Action No. 17-cv-1248 (JPO)(KNF)

## I.    Background and Claims

The Plaintiff Luis Rubio filed his complaint on February 17, 2017, seeking damages for defendants' alleged violations of the FLSA and the NYLL.   On February 21, 2017 Opt-in Plaintiff Jose Luis Rodriguez[3] ("Mr. Rodriguez") and Opt-in Plaintiff Miguel Collado ("Mr. Collado") opted into this litigation.

Plaintiffs allege that the defendants owned and operated a flower shop in New York's Pennsylvania station.  The Plaintiffs claim that they worked for the Defendants as laborers whose duties included, but were not limited to, cutting and removing thorns from flowers, making floral arrangements, and making local floral deliveries. According to his best recollections, Mr. Rubio began working for the Defendants in 1992 and his employment ended on January 20, 2017. According to his best recollections, form the beginning of the statutory period until January 1, 2014, Mr. Rubio worked Monday through Friday, inclusive from 8:00AM until 10:00PM and from January 2, 2014 until his termination he worked Monday through Friday, inclusive, from 12:00PM until 9:00PM.  According to his best recollections, from the beginning of the statutory period until on or about January 1, 2017, Mr. Rubio was paid $9.25 per work hour. From on or about January 2, 2017 until his termination Mr. Rubio was paid $11.00 per work hour.  Mr. Rubio's principal claims are that he disputed receiving compensation for all hours worked and proper overtime compensation for hours worked over 40 in a workweek under the FLSA and NYLL, and that he failed to receive wage statements and wage rate notices in accordance with the NYLL.

Mr. Rodriguez claims that he worked for Defendants from on or about September 15, 2010 until on or about June 18, 2016.  According to his best recollections, from the beginning of his employment until on or about May 31, 2012, Mr. Rodriguez worked Mondays through Fridays, inclusive, from 12:00PM until 8:00PM and Saturday through Sunday, inclusive, from 10:00AM until 6:00PM.  According to his best recollections, from on or about June 1, 2012 until on or about December 31, 2013, he worked Mondays, Wednesdays, Thursdays, Fridays, from 12:00PM until 8:00PM and Saturdays and Sundays from 9:00AM until 6:00PM.  According to his best recollections, from on or about January 1, 2014 until his departure, Mr. Rodriguez worked Mondays, Tuesdays, Wednesdays, and Fridays, from 7:00AM until 3:00PM and Saturdays and Sundays from 9:00AM until 6:00PM.  From the beginning of his employment until May 31, 2012, Mr. Rodriguez claims he was paid $390.00 per week.  From June 1, 2012 until December 31, 2013 Mr. Rodriguez claims he was paid $360.00 per week.  From January 1, 2014, until December 31, 2014, Mr. Rodriquez claims he was paid $400.00 per week.  From January 1, 2015 until December 31, 2015, Mr. Rodriguez claims he was paid $440.00 per week.  From January 1, 2016 until his termination, Mr. Rodriguez claims he was paid $450.00 per week.  Mr. Rodriguez's principal claims are that he disputed receiving compensation for all hours worked and proper overtime compensation for hours worked over 40 in a workweek under the FLSA and NYLL, and that he failed to receive wage statements and wage rate notices in accordance with the NYLL.

---

[3] On July 16, 2016, Mr. Rodriguez filed a complaint in the Southern District of New York, 16-cv-05909, alleging violations of the FLSA and NYLL. This case was dismissed **without** prejudice. *Rodriguez v. Flowerama, et al*; 16-cv-05609; D.E. 23 (hereinafter the "Related Action").

Rubio v. Flowerama, Inc., et al.
Civil Action No. 17-cv-1248 (JPO)(KNF)

Mr. Collado asserts that he worked for Defendants beginning in 1983 and worked until the Spring of 2014. According to his best recollections, until 2010 he was paid $8.50 per work hour and his hourly rate was increased to $9.50 per work hour in 2012. According to his best recollections, he worked approximately 60 hours per work week. Mr. Collado's principal claims are that he disputed receiving compensation for all hours worked and proper overtime compensation for hours worked over 40 in a workweek under the FLSA and NYLL, and that he failed to receive wage statements and wage rate notices in accordance with the NYLL

Since the filing of this and the Related Action, the parties have engaged in arm's length settlement discussions. To that end, Defendants provided the Plaintiffs' counsel with time, pay, and other pertinent records for the Plaintiffs in this action subject to the Stipulated Protective Order Regarding Use and Disclosure of Confidential Information, which was "So Ordered" by the Court on March 10, 2017. (*See* D.E. 12.)

## II.    The Settlement Reached Between the Parties

After extensive paper discovery had been completed, the parties began settlement discussions in earnest. A spreadsheet showing a computation if the likely value of the Plaintiffs' claims is appended hereto as Exhibit "2". Based on this computation, inclusive of $5,000 record-keeping violation and full state and federal liquidated damages, the plaintiffs are recovering approximately 25% of the value of their claimed damages under the proposed settlement and approximately 56% of the value of their alleged unpaid wages.

The settlement value is a small fraction of the value of the Plaintiffs' claims for several reasons. Firstly, the Defendants provided evidence that the corporate defendant has closed its location in Pennsylvania station without plans to reopen. Second, the original owner of the corporate defendant passed away several years prior to the beginning of this lawsuit and left the shares to his wife, Defendant Abel. Ms. Abel, a widow who lives in Florida and subsists partly on social security benefits. Given these facts, and the financial and tax records that were provided by Defendants for settlement purposes, the potential for bankruptcy or insolvency was very real and, if the case were to proceed, could reasonably end with the Plaintiffs not receiving any funds. Plaintiffs fully explored these facts during settlement negotiations and found this possibility outweighed the unlikely possibility of a more substantial recovery if successful through continued litigation.

Moreover, Defendants also disputed the underlying wage claims asserted by Plaintiffs. Namely, Defendants produced extensive time punch, payroll, and other records that memorialized the hours worked by Plaintiffs and payments made to the Plaintiffs for their working time, as well as several brief release documents signed throughout the years that Defendants asserted potentially limited Plaintiffs' possibility of recovery. Defendants also disputed the notice of payrate violations asserted by Plaintiffs, since the Plaintiffs were hired well before the rate of pay notice requirement was enacted into the NYLL, and that Plaintiffs were given wage statements for at least part of the relevant time period. Moreover, Defendants asserted that they could avail themselves of the affirmative defense under the NYLL that bars wage statement and notice of payrate penalties.

Rubio v. Flowerama, Inc., et al.
Civil Action No. 17-cv-1248 (JPO)(KNF)

Given the circumstances in this action, Plaintiffs believe that the $30,000 settlement amount is a fair compromise to resolve this case without further litigation, and without subjecting the parties to the time and expense of more extensive discovery and ongoing litigation. Moreover, the entire payment is due to the office of Plaintiffs' counsel within 3 weeks of the Court approving this Agreement. While Plaintiffs are confident that they would be able to challenge the Defendants' records and inferences successfully, the Plaintiffs are uncomfortable testifying in a formal setting. If their testimony had been rejected by the trier of fact, their recovery could have been significantly minimized. Each settling party is represented by counsel experienced in wage and hour practice.

The settlement agreement reflects a reasonable compromise of the disputed issues and any actual or potential claims in the totality of the circumstances. In addition, the parties believe that the certainty of settlement is better than the uncertain outcome of protracted litigation, and Plaintiffs prefer to receive their proceeds without the inevitable delay and significant risks that continued litigation would entail.

## III.    The Court Should Find the Proposed Settlement Fair and Reasonable

A FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (quoting *Crabtree v. Volkert, Inc*., No. 11–0529–WS–B, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013)). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig*., No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc*., No. 07-CV-86, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.,* 679 F.2d 1350, 1354 (11th Cir. 1982)).

In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of the circumstances, including the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. *Wolinsky*, 900 F. Supp. 2d at 335.

Rubio v. Flowerama, Inc., et al.
Civil Action No. 17-cv-1248 (JPO)(KNF)

*Plaintiffs' Range of Possible Recovery*

It is clear that the settlement is well below the range I would normally consider acceptable, since it only represents a small percentage of the Plaintiffs' claims. However, proceeding forward with a costly and uncertain litigation in the face of Defendants' dire financial straits would not only be ill considered, it would be reckless and irresponsible on my part.

If settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the potential outcome. *Morris v. Affinity Health Plan*, 859 F. Supp. 2d 611, 620 (S.D.N.Y. 2012). In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the Plaintiff. . . against the relief offered by the Settlement." *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *8 (S.D.N.Y. Apr. 16, 2012). In light of the totality of the circumstances, the settlement represents a reasonable compromise of the *bona fide* disputes in this matter. The settlement eliminates risks and ensures that the Plaintiffs will recover most of their alleged damages over a very short period of time.

*Whether the Settlement Agreement is the Product of Arm's-Length Bargaining*

A "presumption of fairness, adequacy and reasonableness may attach to a . . . settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotations omitted). The Parties engaged in discovery and participated in arm's length settlement discussions in order to arrive at this settlement. Because the settlement involves a clear and *bona fide* wage dispute in contested litigation, which was resolved through an arm's-length settlement process involving the exchange of extensive time, payroll, financial, and other records, it should be granted judicial approval.

*Possibility of Fraud or Collusion*

There is no possibility that this settlement was precipitated by reason of "overreaching" by the employer. To the contrary, the settlement was the result of vigorous arm's-length negotiations over a significant period of time. The Parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 05 CIV 10240, 2007 WL 2230177, at *4 (S.D.N.Y July 27, 2007). Here, the settlement was reached after the Parties were able to fully evaluate the strengths and weaknesses of the claims and defenses presented in the case and, more importantly, after the undersigned was able to assess the uncollectibility of any judgment which could have been taken against the Defendants. At all times, negotiations took place between experienced counsel and were at arm's-length, including extensive discussions, negotiations, and debates over the exact terms of the Agreement. Similarly, the Plaintiffs stopped working for the Defendants long before this litigation commenced, so there was no opportunity for direct collusion between the adverse parties. Thus, there was no fraud or collusion between counsel or parties and as such, the Settlement Agreement should be approved.

Rubio v. Flowerama, Inc., et al.
Civil Action No. 17-cv-1248 (JPO)(KNF)

## IV.    Plaintiffs' Counsel is Entitled to a Reasonable Fee of One-Third of the Settlement Amount

Plaintiffs' Counsel seeks a reasonable one-third (1/3) award from the total settlement amount of $30,000. As stated above (*see supra* note 1), Defendants do not oppose this application so long as it does not increase the final settlement amount and is considered separately from the fairness, reasonableness, adequacy and good faith of the settlement pursuant to the terms of Section 4.B of the Agreement. Although the undersigned fully recognizes the Court's prerogative to evaluate the attorneys' fee arrangement in a FLSA matter, not all courts in this circuit have read the *Cheeks* decision to require this assessment. *See Gutierrez v. 352 East 86th St. Rest. Inc.*, 2016 U.S. Dist. LEXIS 23967, *3 -4 n. 1 (S.D.N.Y Feb. 19, 2016) ("I do not understand the FLSA to regulate the relationship between the employee as plaintiff and his counsel or to alter the freedom of contract between a client and his attorney"). Additionally, to the extent *Cheeks* did mention attorney's fees, it was in the context of an abusive attorney's fee that went as high as 43.6%, in contrast to the standard one third which is requested here. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d at 206. The foregoing notwithstanding, the undersigned submits as follows in support of the requested fee:

Plaintiff's counsel is entitled to reasonable attorneys' fees to compensate for work in recovering withheld compensation in this action.

I have personally expended 26.8 hours in the prosecution of this case, (Exhibit "3", Attorney Kumar's time records). Mr. Cafaro, expended 1.6 hours, (Exhibit "4" Attorney Cafaro's time records) and my paralegal, Nicholas Duran, Jr. has expended 21.3 hours, (Exhibit "5", Duran Time Records).

"To determine the quality of representation, courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144, at *31 (S.D.N.Y Jan. 31, 2007) (*citing In re Global Crossing and ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004)).

Mr. Carfaro graduated *summa cum laude* from Fordham University with a B.S. in Accounting in 1976. He then attended the University of San Diego School of Law where I graduated in 1979. Later that same year he was admitted to the California State Bar, and in 1981, he was admitted to the New York State Bar. Since being admitted in New York, he has also been admitted into the bars of both Texas and Maryland. Since his admission in New York je served as an Assistant District Attorney in Bronx County for 4 years. In 1986 he began working in private practice, where for many years he focused on personal injury and medical malpractice work. He is a successful trial attorney, having personally taken two verdicts in eight figures and has been lead counsel in many cases which produced numerous settlements and verdicts in seven figures. In 2009, he began development of the wage and hour practice of the firm. Since then, this office has filed over 400 individual, collective, and class actions under the Fair Labor Standards Act and New York Labor Law. Under his leadership, the firm has also started a vibrant plaintiff's side employment discrimination practice. He is a member of the New York chapter of the National Employment Lawyers Association. He is also fluent in Spanish, which was very valuable in many

Rubio v. Flowerama, Inc., et al.
Civil Action No. 17-cv-1248 (JPO)(KNF)

cases, such as this one, where Spanish was the clients' first language. He has also been certified as class counsel, *see Chavarria v. Airport Serv., LLC*, 875 F. Supp. 2d 164, (E.D.N.Y. 2012). The Court is also respectfully directed to *Martinez v. Bella Bianchi's Ltd*., *et al,* 16-cv-6800 (E.D.N.Y. 2017), where the undersigned was commended by the Court for exemplary service to the client in a wage and hour action.

Mr. Cafaro's normal hourly rate is $400, which has been repeatedly approved by the federal judiciary. *See Cajamarca v. Yerina Rest. Corp.*, 2016 U.S. Dist. LEXIS 102686, *4-5 (S.D.N.Y. Aug. 4, 2016); *Flores v. Food Exrpess Rego Park, Inc.*, 2016 U.S. Dist. LEXIS 11351, 2016 WL 386042 (E.D.N.Y. Feb. 1, 2016); *Mendes-Garcia v. 77 Deerhurst Corp. et al.*, No. 11-cv-02797 (PGG) (MHD), D.E. 226 (S.D.N.Y. Aug. 19, 2014) (awarding William Cafaro, Esq. a reasonable rate of $400 per hour in a FLSA collective matter with approximately 175 opt-ins). Partners are often approved at significantly higher rates than what the undersigned is requesting here, *see, Clark v. Ecolab, Inc.*, 07 Civ. 08623 (PAC), DE 101, (S.D.N.Y. Apr 27, 2010) (in 2010, awarding rates for partners between $475 to $900 per hour); *Guallpa v. N.Y. Pro Signs Inc.*, No. 11cv3133 (LGS) (FM), 2014 U.S. Dist. LEXIS 77033 (S.D.N.Y. May 27, 2014) (approving rate of $600 per hour for a partner in a wage and hour action). Plaintiffs are requesting the Court approve Mr. Cafaro at his normal hourly rate of $400.00.

I have been an associate with the Law Offices of William Cafaro since 2013. I earned my B.B.A. with dual concentrations in Finance and Computer Information Systems, *cum laude*, from George Washington University in 2005 and a J.D from Hofstra University School of Law in 2012. While in law school, I worked as a law clerk for several employment law firms of note, including Schwartz & Perry, LLP and Outten & Golden LLP. Also, while in law school, I was a judicial intern for United States Magistrate Judge Ronald L. Ellis of the Southern District of New York. I was admitted to practice in the state courts of New York and New Jersey in 2013 and later that same year I was admitted to practice before the Southern and Eastern Districts of New York. Since being admitted in 2013, I have focused primarily on plaintiffs' employment matters in both wage and hour matters as well as discrimination actions. Further, while working at the Law Offices of William Cafaro, I have had the opportunity to second chair several successful wage and hour actions through trial. I prevailed in a wage and hour case which I tried in the Southern District of New York, *Cajamarca v. Yerina Restaurant Corp., et al.*, No. 15-cv-08244 (GHW), and was approved at $250 per hour in the post-trial fee application. I have also been selected to the New York Super Lawyer's Rising Star List for the year 2017. Moreover, I am a member of the South Asian Bar Association of New York, where I sit on the Public Interest Committee as well as the National Employment Lawyers Association. My normal hourly rate is $250.00 and the Plaintiffs are requesting this rate for his work in this case. *See Cajamarca v. Yerina Rest. Corp.*, No. 15-cv-8244, 2016 U.S. Dist. LEXIS 102686 (S.D.N.Y Aug. 4, 2016) (awarding Amit Kumar his normal hourly rate of $250 per hour); *Mendes-Garcia v. 77 Deerhurst Corp. et al.*, No. 11-cv-02797 (PGG) (MHD), D.E. 226 (S.D.N.Y. Aug. 19, 2014) (awarding Amit Kumar, Esq. a reasonable rate of $250 per hour in a FLSA matter). Plaintiffs are requesting the Court approve me at my normal hourly rate of $250.00.

Nicholas Duran is a paralegal with the Law Offices of William Cafaro. He graduated from John Jay College of Criminal Justice, where he received a B.S. in Criminal Justice with a minor in

**8 |** P a g e

Rubio v. Flowerama, Inc., et al.
Civil Action No. 17-cv-1248 (JPO)(KNF)

Law in 2009.  Concurrent with his attendance at John Jay College of Criminal Justice, Mr. Duran graduated from LaGuardia Community College in 2007, where is received an A.A.S degree in Paralegal Studies.  Mr. Duran began working for the Law Offices of William Cafaro in 2007 and is fluent in both English and Spanish.  Mr. Duran provided paralegal, support and translation services throughout the duration of the litigation.  Mr. Duran's normal hourly rate is $125.00 and Plaintiffs are requesting same for his work on this action.  *See Cajamarca v. Yerina Rest. Corp.*, No. 15-cv-8244, 2016 U.S. Dist. LEXIS 102686 (S.D.N.Y Aug. 4, 2016) (awarding Mr. Duran his normal hourly rate of $125 per hour).  Plaintiffs are requesting the Court approve Mr. Duran at his normal hourly rate of $125.00.

At the requested rates and time, Plaintiffs' counsel has expended:

| Name | Position | Hours | Hourly Rate | Lodestar Amount |
|------|----------|-------|-------------|-----------------|
| William Cafaro | Partner | 1.6 | $400.00 | $640.00 |
| Amit Kumar | Sr. Associate | 26.8 | $250.00 | $6,700.00 |
| Nicholas Duran | Paralegal | 21.3 | $125.00 | $2,662.50 |
| **TOTAL** | | | | **$10,002.50** |

Under the retainer agreement, Plaintiffs' counsel is entitled to receive Ten Thousand Dollars and Zero Cents ($10,000.00) from the proposed settlement as attorneys' fees, and an additional $950.00 in reasonable out of pocket disbursements incurred by attorneys and ordinarily charged to the file. *See LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998). These costs are for filing two actions in the Southern District of New York ($800.00) and service of process for the Related Action ($150.00).

The lodestar here exceeds the one third contingency fee, reflecting uncompensated work that counsel has done.  Therefore, the contingency fee is reasonable in this case. *See Geskina v. Admore Air Conditioning Corp.*, 2017 U.S. Dist. LEXIS 67583, *8-9 (S.D.N.Y. May 3, 2017)

**V.    Conclusion**

For the reasons set forth above, Plaintiffs request, with Defendants' approval and consent, that the Court approve the settlement as reflected in the Agreement as fair, adequate, and reasonable, and that the Court terminate this matter and immediately dismiss the complaint and all claims asserted by Plaintiffs with prejudice.  Plaintiffs' counsel further requests that the Court approve the attorney's fee award reflected in the Agreement as fair and reasonable.

Respectfully submitted,
LAW OFFICES OF WILLIAM CAFARO

  /s/ Amit Kumar
By Amit Kumar, Esq. (AK 0822)
*Attorneys for Plaintiff*
108 West 39th Street, Suite 602

Rubio v. Flowerama, Inc., et al.
Civil Action No. 17-cv-1248 (JPO)(KNF)

New York, New York 10018
(212) 583-7400
Akumar@CafaroEsq.com

cc:
Defense Counsel (via ECF)